Number 181140, United States v. Greg Takesian Let me just know how to run it, can you wait one second? Whenever you're ready. Thank you. If I could reserve three minutes for rebuttal. My name is Tina Schneider, I'm here on behalf of the defendant Greg Takesian. He was convicted of four counts of filing a false tax return and one count of obstruction of the IRS. I'd like to first address the admission of stale prior convictions to impeach him. And first I'd like to touch on briefly the procedural background because the sand shifted pretty significantly this past Friday. So the defendant filed two motions in limine to prevent his 11-year-old false statement and wire fraud convictions from coming in on cross. The government's position was that it wanted to use those, or at least it wanted to use the false statement to impeach his credibility should he testify. It appeared from the record that the court never ruled on this issue. The government crossed the defendant with those priors without objection. This is where things stood until Friday afternoon when the government found in its files an email from the court to counsel sent the day before the defendant was going to testify, which said if Mr. Takesian testifies the court will allow his prior convictions. That email was never docketed and the government submitted it to the court and to me on Friday. But you're saying defense counsel didn't get notice of the email? The defense counsel would have. Defense counsel at trial would have had the email, but the record on appeal didn't have that in it. So the briefs are all written as if the court did not definitively rule on the issue, when it turns out the court did definitively rule on the issue and said those priors could come in to impeach. Would you mind pulling the mic down just for the recording? Sorry. So the standard of review as a result of this, because the court definitively ruled on the issue and allowed those priors to come in, is abuse of discretion. First off, there's an error of law here, which is necessarily an abuse of discretion. There is nothing to show that the court considered Rule 609B or engaged in the appropriate weighing or what specific facts and circumstances it may have relied upon as required by the rule. So right there we have an abuse of discretion. Our case law is kind of all over the place, but essentially it says that we require the judge to do it, but we don't necessarily require the judge to be as expressive as maybe we would hope for appellate purposes. I'd respectfully disagree with that, Your Honor. The government relies on Greedo for that proposition, saying in Greedo the court said, we can tell from what the court said that it considered it engaged in the weighing and considered the factors. But Greedo was a 609A case, not a 609B case. And under B, the rule specifically says the court weighing specific facts and circumstances has to do this balancing. It doesn't say it has to make an on-the-record finding. Well, the notes to the rule, the annotations to the rule do say that. The rule itself doesn't say that. Then there's an older case. Your conclusion that it's an abuse of discretion depends on the fact that there was not an on-the-record finding. I have like five reasons why it's an abuse of discretion. Is that one of them? Yeah, that's one of them. So there is this older First Circuit case. So every other circuit except possibly the Eighth has found, no, you need to make this on-the-record assessment. There is an older First Circuit case, Brown, which is a 609B case, which says even though the court didn't make that particular finding on the record, we can tell from the facts and circumstances that the judge did talk about that the judge engaged in the appropriate way, which included that it was a one-on-one credibility contest between a witness and the defendant. The witness's prior criminal history had come into evidence. And so that made, in the judge's mind, that made the evidence of the defendant's stale priors particularly evident. Were there memos submitted in support of and in opposition to the motion in limine? Yes, Your Honor, and those are included in our supplemental appendix. So we have case law that says that we can take a look to see what the arguments are in the respective memos and assume that the court took those arguments in consideration. I'm not sure that's a safe assumption here. Why? So because court was adjourning for the day Thursday and the government said to the court, and it's quoted in our brief, Your Honor, you still have this motion to deal with. And the court said, oh, good, because I wouldn't want to just have to do it Tuesday morning when the court was going to reconvene. So the court went back to the chamber and actually put something in writing? No. You don't think the assumption should be that the court sat down and thought about it before typing up an e-mail denying? Well, here's the thing. Yeah. The rule is, the rule sets forth very specific requirements if a stale conviction is going to be admitted. Because that's, the presumption is it's excluded. It's excluded unless and until the court does certain things. There is nothing on the record or in the e-mail. Well, if that's how you're writing the rule, then shouldn't you have to object after the answer is made? Because you wouldn't be, if the way the rule works is, even though this is the type of evidence that if there is a finding can be admitted, it can't be admitted in the absence of the kind of finding you're saying must be made, then isn't it incumbent on the defendant when they get a ruling without a finding to object to the failure to make the finding? Otherwise, it should be plain error. No, Your Honor, because what the defendant's obligation is here was to put this issue before the court, the issue of whether those priors should be admitted, which the defendant did. And the defense, the obligation is also if the ruling is equivocal, it's the defense's obligation to make sure the court makes a definitive ruling if there's any doubt. But if the ruling is in accord with what you're arguing would be the demands upon the district court, you don't think that there's any further obligation for the defendant to speak up? No, I don't. The defendant put the issue before the court, and it's not up to the defendant to ensure that the judge... He didn't put the issue of whether you have to make an on-the-record finding before the court. That's correct, Your Honor. He didn't put that issue before the court. But that's the issue you're saying is now the ground for reversal. Well, no, I'm saying a lie. That's one of them. Yeah, so that's the issue we're talking about. But even more fundamentally... Before you move on to the more fundamental one, just so I get on that issue, why isn't it plain error with respect to that issue, precisely because the issue of whether there had to be an on-the-record finding was not put at issue? Because the rules of evidence say... Well, that's an argument that it's a plain error. That's not an argument that you don't apply plain error. If you're going to tell me that it's clear, that might be a reason to conclude it's plain here that it was not an on-the-record finding, and it was plain that it had to be. But if the question is, was that issue put in play, it's hard to see how, on your account, it was, which would suggest you should review for plain error. Well, I don't think it was the defense's obligation to tell the judge, not only are we asking for a ruling, but you need to follow the rule when you make the ruling. There was no indication whatsoever that the judge weighed the probative value against the prejudicial effect. The judge never said those words. Under Rule 609A, the prior, the sale prior, is inadmissible unless the probative value substantially outweighs the prejudicial effect. So it's kind of a flip of the analysis done with other rules. And, I mean, the judge never mentioned the rule at all in this ruling. Even were this court to look at the pleadings below, to see, and remember, it would be the government's burden here because the government was the proponent of this evidence, to see what facts and circumstances the government put forth to support the admission of these priors. The government says, well, the priors would be very relevant if he testified at trial. Well, that's, 609 only comes into play when someone testifies at trial. The government says, well, the prior isn't all that similar to the instant charges without any elaboration. And if we look at how the prior was elicited at trial, it's outrageous because the government goes through these steps of getting the defendant to confirm that the tax returns he's accused of lying on all contain a statement that they're signed under pains and penalties of perjury. And the prosecutor elicits from the defendant that that means you have to be honest. And then the prosecutor in the crescendo to all this says, that means you can't make a material false statement, correct? The defendant says yes. And the prosecutor says, but you were convicted of making a material false statement before, weren't you? So the prosecutor used this prior not to impeach the defendant's credibility on the stand as a witness, but to impeach his credibility as a taxpayer. To actually argue that you were a liar back then, so you lie on your tax returns now. In light of this, the error, the abuse of discretion was not harmless here. The evidence was not overwhelming. It depended on whether, you know, the defense was that this money didn't have to be declared by the defendant because it was a loan. And even the government stated, you know, if you believe, if you believe, the only way to believe this business about the loan is to believe the defendant. Before you sit down, if you could just talk about the instructional error issue. So the government's response is that the defendant was aware that his taxes were being investigated. If I assume that the record provided substantial, maybe even overwhelming support for the idea that the government, in the course of the investigation it was conducting, was asking about his tax return, so he would have known that they were interested in it. Can you still win on that instructional issue? Yes. Okay, so just explain how. So the Marinello issue, first off, it can't be neatly segregated from our first issue on appeal. So in assessing the evidence in support of the obstruction charge, we have to take into account that this stale part conviction was introduced when it should not have been introduced. Assuming you lost on that issue, can you still win on the instructional issue? Just focusing on that point and the question I asked. Yes, because the government relied on two things in arguing the defendant obstructed. It argued that he submitted unfiled tax returns in May of 2013 and that he made up this business about the loan in mid-2014. The government now is saying, oh no, we just are relying on the loan business in 2014 and it would have been clear to him or the jury, there was lots of evidence that he would have known that we were investigating him in 2014. The problem for the government is that it argued below that he submitted these unfiled tax returns as part of his scheme to obstruct the IRS where there was no evidence that he would have known the IRS was investigating him at that point or even that they were. There was a health care fraud investigation going on in connection with which the company records were subpoenaed, not his. But doesn't the record show that he would have known he was being asked about his filings in the course of that investigation? He wasn't asked about his filings in the course of that investigation. He was up until the point where he submitted unfiled corporate tax returns to the company. They hadn't asked him anything. Does that answer your question? Yeah. Thank you. Your Honor, may it please the Court, Randall Crum on behalf of the government. To start with the first issue is to address what has to do with the admission of prior conviction. I think the standard of view is the really important question to address. We acknowledge that this e-mail that was discovered strengthens the argument that on the bare issue of miscibility, which was the question debated in Motions Eliminate, that that could have been preserved, although we don't think it's clear because the rule itself says it's preserved by an on-the-record ruling. This was not made part of the record, and the parties have an obligation, each independent has an obligation, to clarify that they have the ruling they want on the record. But at best, what's preserved here is just the bare question of whether this conviction could be admitted, subject to the rule, and it not be an abuse of discretion. Everything else, the question of whether findings were made, what they should have been, what they should have contained, and questions about the form and wording of the question are all on plain error because each of those things became apparent only at the time that the ruling was made and then the evidence was admitted, and they were unobjected to. And so in the government's view, that's the critical issue. There was sufficient evidence, sufficient rationale to admit it as not an abuse of discretion on the bare issue of the conviction, and the remaining issues fail on plain error review because even if other courts have said that it's required on-the-record findings, this Court hasn't said it in a clear way, so it can't be a clear error not to do it, and there's no objection or argument that a different wording of the question would have resulted in a different result, which, again, to show prejudice on plain error review, would have to be an argument that had the very same conviction but brought out in a slightly different way, the result would have been different. So on those issues, we think that the standard review ultimately resolves the question. If you have any further questions on that issue, I can address them. But then I was going to talk a bit, respond to the second point about the instructional error. Again, we concede that there's an instructional error in not making a requirement of the nexus that appears in Maranello. But the question, one thing I want to clarify, and I take some responsibility in the wording of one sentence in the brief, it's not the government's position that the first obstructive act was the loan. The government's position is that all of the obstructive acts were after the time that he had become aware and that one of the ways that he became aware was through subpoenaing the corporate records and his decision to file them, to respond to it, by submitting unfiled returns that he concocted apparently just the day before. But when that subpoena occurs, is there any investigation open into him? Well, the evidence at trial was, on the disputed evidence, was that there was. So we had two pieces of testimony. There was a testimony, and I'm going to get the names, one of them was Youngquist and the other I'm going to not remember, that said it began in 2012, an investigation into him. What does it him? What's him mean? It means into Tekijian. And they said, I think they said, did you begin an investigation into Greg Tekijian? And the person said, this is one of the witnesses called by the defendant, began in 2012. And there's another, raised in the reply brief, that another person had been asked when did it begin. They said after the investigation into Atom V&A, but that started in 2011. So that doesn't, again, suggest that there's not an investigation underway. So we think that there was sort of uncontested evidence. And, again, some of the questioning of the witnesses, government witnesses, suggested, sort of took as a given that there was an investigation and questioned how it was pursued and whether it was pursued sufficiently. So what is there in the record that would lead one to the understanding that Tekijian knew that he was under investigation? Because it initially started out as the health care fraud investigation, right? Right. And I think there's two points. I think it's important, and I think in the brief I laid out, but there's sort of two theories here that the government's pursuing in arguing that. There's a whole question about what the appropriate standard is on plenary review to begin with, what the burden is, what the defendant would have to show to show a plenary. But leaving aside this and treating it under the sort of higher standard this Court has sometimes employed, there's two ways to show it. One is that the jury, in effect, actually did make the omitted finding based on the way the case was tried with the jury and instructions given. And that's the first argument we make. And the second is sort of an overwhelming evidence argument, which sort of leaves aside the instructions and just says, what was the evidence? And I say this as a preface to answering your question because part of the answer is, your answer goes to the second point, which is, what was the evidence? On the second point of looking at the evidence alone, our view is that there was overwhelming evidence that an investigation was at least foreseeable to him based on the fact of a subpoena sent to him, asking for the corporate's records, including specifically its tax documents. The fact that in a subsequent meeting, an anthropologist on cross-examination, he was asked not only about the corporate tax documents but his own. The fact that his father was visited and was subpoenaed to testify and was questioned about tax documents. And thereafter, a few weeks thereafter, he met with his father, and they together came up with a way of the revisions of the corporate tax documents that were submitted that included the loan references. But I'm just still not tracking what's going on. As far as what he knows is there's a health care investigation, right? Right. But that's not, we don't concede that that's all he knew. We know, I'm not sure that the evidence came out. He testified that he thought it might have been into some other kind of fraud that he was over-billing or something like that. I'm not, there's not a suggestion that the evidence that he was told. What is the piece of evidence you're relying on as to what he, that he knew he was being investigated for the kind of thing that this statute precludes him from obstructing? Well, I would say that it's whether it was foreseeable. Not only whether he knew, but whether, because the statute, the Marinel allows it to be whether he knew that there was an investigation or that there was a foreseeable investigation. What's the evidence of foreseeability? Well, the evidence is, you know, he's the CPA. His job is to process tax returns. First, again, there's a subpoena asking for corporate tax returns. I think it's important to note the way that he responds to that. He could have said, I haven't filed them, they don't exist yet. Instead, he again, you know, admitted, performs the tax returns. Just to get a direct answer, there's a health care investigation going on. They ask him in the course of that, could you hand over the corporate tax records for the company we're investigating in the health care investigation? At that moment, are you saying it is foreseeable to him that he could be investigated for the tax fraud, and therefore under Marinello, anything he does to cover up his tax filings in response to having heard that question makes it foreseeable to him? I'm saying that the jury could have found that. Just help me yes, no on that one. Yes, the jury could have found that. Okay, so now, great. For purposes of prejudice, what is the additional evidence that would make it overwhelmingly likely that the jury had to find that? I understand you're going to say maybe you don't have to have that standard, but if that is the standard, what would it be? It's the additional evidence that comes over the course of time. Which is what? Well, that he's called in and he's questioned and he's specifically asked about his taxes, not only the corporate taxes, but his taxes. He admits this happens in August of the same year. He admits that then his father is questioned and subpoenaed, and the discussion is specifically about the father's taxes as based on the corporate tax returns prepared by Takisian. He plays a little cue and says, I've only talked to my mother, but the fact is two weeks or three weeks later, he meets with his father and they entirely re-write the corporate tax returns. So if I follow, you're saying on this record you couldn't read it otherwise than to know that the government was going to be asking him for information that would reveal that he might have committed tax fraud. And then the fact that he then covers it up means he was obstructing an investigation that it's just overwhelmingly likely that he foresaw what happened. Is that the government's argument? The point is that it doesn't have to be an investigation of his personal returns. It's an investigation of the corporate returns as well. That can be obstructing that investigation. And I think on that it's even clearer. Again, for the reason I was talking about, there was the father subpoenaed, he meets with the father, they re-write them. He can't provide a coherent explanation as to what he did or why they did it, except that suddenly this loan appears. And then, you know, and then he submits those returns and then he submits these additional returns modified or amended personal returns, which are shown to have a lot of, you know, bogus deductions in them. So are you saying that part of the obstruction charge relates to his obstruction relative to the health care? No, that an investigation, if he did not know specifically that it was a tax investigation, it was at least foreseeable to him. Overwhelming evidence. But what's foreseeable, that they would investigate his taxes once they looked at them? No, that he had submitted things that they were interested in. Again, that's why I'm trying to lay it out over a period of time, because this thing, you look at the record as a whole, the plaintiff review, the issue is he submits these returns, then, you know, there's questioning of him, then, you know, he submits additional returns. So there's a series of steps in which he is taking in response. I guess, you know, our position is that overwhelmingly shows that he was cognizant that the investigation had turned to these returns. So he was modifying them and changing them and resubmitting them. And it taken all together, you can't but see this as reflecting, again, at least a foreseeable interest of tax authorities in the returns, as opposed to health care fraud, separate from the health care fraud, that an interest in those returns had arisen and was being pursued. And so whether one views it as a matter of knowledge or foreseeability, it seems to me it's at least foreseeable. So even if this wasn't plain error, you'd say the same result? Well, I think that the, yes, I think that's. Because just one question that's just a puzzle to me, why exactly it should be plain error, because I thought we had clear circuit precedent prior to Martinello or Marinello. The precedent was to the contrary. Right. Right. So why should he have to object? I thought we've got precedent that says if there's a wall of precedent, it's just futile. So it seems odd that we apply plain error here to me. Well, I mean, I believe many of the cases we cite on this very question of plaintiff review are exactly that situation. In a case like Jones, a Supreme Court decision changing the elements of the crime has occurred midstream. There's still held to plain error. Even when our precedent was directly to the contrary? Because that's, we've got precedent that says if there's a wall of precedent, you don't have to object. No, no, I'm certainly, I mean, I can check to see, but I believe on some of these questions like the Jones issue, whether you have to prove the specific element of crime or death in a carjacking, I would not be surprised if we had precedent to the contrary, because I believe most circuits did. I don't think that's a reason not to apply plain error review. And I can look to be sure, but I'm pretty certain that the court has applied it nonetheless, even in contexts where it hasn't been raised because of intervening change in law. I just want to briefly add, just because there is this separate argument, and you're going to have to ask about it, but there is this theory that we rely on equally, which is what the jury necessarily found, which I just want to point out. We do understand that to be separate from overwhelming evidence and to provide sort of an alternative way to affirm when the way the case was presented to the jury and the jury was instructed would lead to a belief that the jury necessarily implicitly found this, even though they weren't asked to. I think this is important here specifically because there was, the government argued repetitively and at every turn that the only reason this was obstruction was because he knew about it and he took these actions in response. He argued that in his opening and in his closing, defense counsel never disagreed that that was the issue on appeal, or issue the jury had to consider, but only asked whether we had shown that he did know. And the judge in his instructions pointed to that theory, said the government's theory is that he took these obstructive actions in response to the investigation once he learned about it. So that, I think, provides an alternative way of looking at the very same question. If we can tell that on this presentation of the facts, on this set of evidence, that he would necessarily have relied on a finding that he knew in order to reach his verdict, the court can also affirm without looking to the sort of abstract overwhelming quality of the evidence. If there aren't any other questions, the government would ask the court to affirm. Thank you. First, in response to your question, Judge Thompson, the government's theory set forth in the indictment and at trial was that he was obstructing in relation to his own personal returns, not in relation to the corporate returns. So that was the government's theory. And if I could just go through a chronology about what happened when, I think it will illustrate that there was a basis for the jury to have thought that when he submitted the unfiled tax returns, he did not know that there was an IRS investigation or that one was in the offing. And that was his argument at trial. He didn't know about this. And so that was disputed. So in December of 2011, we have a raid on the offices of Mr. Galates, the health care. Why does he say he did it? What's that? Why did he submit what he submitted? Why did he create those documents the day before? He said he submitted draft documents. They were clearly marked as draft. And between the time he submitted them to the government and the time he filed the corporate tax returns, he and his father had decided to alter their tax returns so that the loan was shown on, ultimately shown on the corporate return, not on the dad's return. Was the Takasians and their company, the accountants for the health care company from 2008 through 2011 when the returns were not filed? Yes. Yes. So there's a search of Galates' office in late 2011. In January of 2013, there's the first grand jury subpoena included in the appendix, which is issued to Takasian and company, not to Greg Takasian, asking for records it has related to Galates' company. In April of 2013, there's the second grand jury subpoena, again issued to Takasian and company, not to Mr. Takasian individually. But he received that. Yes, apparently he did because he's the one who turned over documents. The false and misleading documents. There were unfiled tax returns that he testified had been marked draft. They were not signed. They hadn't been filed. And it would have been evident that they were unsigned and unfiled. Why is it not foreseeable to him at that point? Because everything that's happened up to that point when he turns over those documents to the government is in connection with a health care fraud investigation. But he knows what his files are. And he now knows they're going to have seen. They never asked for his tax returns in these subpoenas. And there's actually a separate statute. But the drafts have indices as to the payments made to him and his company. The drafts were tax returns, unfiled tax returns for the company. Right, which would have referenced business expenses, specifically accountant's fees. No, because these are what we're talking about here are not the tax returns of Golodis' company. They're tax returns of Dekusian and company. So his returns would have reflected income received from Golodis' company. The corporate tax returns would have reflected income received from Golodis' company. His personal returns would not have because those payments were made to the corporation, not to my client directly. Everything else the government relies upon to show knowledge of my client of a tax investigation occurred after the submission of these unfiled tax returns to the government. The meeting with the U.S. Attorney. We don't need a listing. Okay. Thank you. Thank you.